# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**MARK LABOUVE**                                                                   **PLAINTIFF**

**V.**                                                                         **NO. 4:17-CV-95-DMB-JMV**

**METSO MINERALS INDUSTRIES,**
**INC. a/k/a Metso Minerals Frozen**
**Pension Plan, et al.**                                                **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is Metso Minerals Industries, Inc.'s motion to dismiss, Doc. #3; and Mark LaBouve's motion for summary judgment, Doc. #16.

## I
## Procedural History

On July 3, 2017, Mark LaBouve filed a complaint in this Court against Metso Minerals Industries, Inc. alleging breach of contract and breach of fiduciary duty based on Metso's refusal to pay him certain benefits under its pension plan governed by the Employee Retirement Income Security Act ("ERISA"). Doc. #1. On July 26, 2017, Metso filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. #3. LaBouve timely responded, Doc. #13; and Metso timely replied, Doc. #21.

On the same day he responded to Metso's motion to dismiss, LaBouve filed a motion for summary judgment. Doc. #16. Metso timely responded to the summary judgment motion. Doc. #25. LaBouve did not reply.

## II
## Rule 12(b)(6) Standard

"To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement for relief—including factual

allegations that, when assumed to be true, raise a right to relief above the speculative level." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) (citing *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015)). Under this standard, a court must "accept all well-pleaded facts as true." *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 199–200 (5th Cir. 2016) (internal quotation marks omitted).

### III
### Factual Allegations

As an employee of Metso, LaBouve participated in Metso's ERISA-governed pension plan. Doc. #1 at ¶¶ 4, 7–8. At some point during his employment with Metso, LaBouve was injured on the job. *Id*. at ¶ 12. On January 29, 2014, LaBouve and Metso executed a "Global Settlement Agreement and General Release" ("Agreement"), which settled, among other things, LaBouve's worker's compensation claim.[1] *Id*. at ¶¶ 12–13; Doc. #1-2.[2] Pursuant to the Agreement, LaBouve received from Metso $190,000.00 related to his worker's compensation claim and $3,750.00 related to his other pending claims, and LaBouve's counsel received $1,250.00. Doc. #1-2 at ¶ 4. The Agreement includes a "Waiver and Release of Claims" provision. *Id*. at ¶ 7.

Sometime after the Agreement's execution, LaBouve requested disability benefits and, in the alternative, retirement benefits he believed were rightfully due to him under Metso's pension plan. Doc. #1 at ¶ 14. On February 19, 2016, Metso denied LaBouve's request based on the "Waiver and Release of Claims" provision in the Agreement. *Id*. at ¶ 15. Thereafter, on July 3, 2017, LaBouve filed this lawsuit seeking the "full amount of his Disability Benefits and/or Retirement Benefits." *Id*. at 4.

---

[1] The Agreement settled LaBouve's worker's compensation claim, a potential American with Disabilities Act claim, and a union grievance. Doc. #1-2 at ¶ 3.

[2] A court may consider documents attached to the complaint on a Rule 12(b)(6) motion to dismiss. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

**IV**
**Analysis**

As explained above, LaBouve's complaint asserts claims for breach of contract and breach of fiduciary duty. Metso seeks dismissal of both claims.

**A. Breach of Contract**

Metso concedes that LaBouve is entitled to his retirement benefits upon attaining the age of sixty-five, or may apply for reduced-rate retirement benefits before reaching the age of sixty-five. Doc. #21 at 5–6 & n.1. Accordingly, the Court will only consider whether LaBouve has sufficiently stated a claim for disability benefits. In that regard, the sole issue is whether LaBouve, by executing the Agreement, released[3] his right to disability benefits under Metso's pension plan.

**1. ERISA's Anti-Alienation provision**

At the outset, LaBouve argues that ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1),[4] strictly prohibits the waiver or release of vested ERISA benefits and, because his benefits are vested, any such waiver or release is void. Metso contends that the Fifth Circuit has concluded that ERISA benefits may be waived or released despite § 1056(d)(1), provided such is knowing and voluntary.

In *Rhoades v. Casey*, the Fifth Circuit held that "the anti-alienation provision of ERISA is not absolute." 196 F.3d 592, 598 (5th Cir. 1999). One of the exceptions to the anti-alienation provision is "a knowing and voluntary waiver of retirement benefits that is executed to reach a

---

[3] The parties use the terms "waiver" and "release" interchangeably in their briefing though they are distinct legal concepts. *See, e.g.,* Doc. #14 at 2, 4 (section I titled, "The Alleged Waiver is Void," and section III(A) titled, "If the Alleged Release of Pension Benefits Is Not Void Then It Is Invalid"); Doc. #21 (section II titled, "Plaintiff Knowingly and Voluntarily Released His Claims For Disability Pension Benefits," and subsection II(B) titled, "Plaintiff's waiver was voluntary and knowing."). The relevant portion of the Agreement provides, "The Employee … fully, finally and forever releases and discharges the Company ... from any and all claims and rights of any kind … including, but not limited to … the Employee Retirement Income Security Act of 1974 …." Doc. #1-2 at ¶ 7.

[4] ERISA's anti-alienation provision provides, "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

settlement." *Id.*; *see Stobnicki v. Textron, Inc.*, 868 F.2d 1460, 1465 (5th Cir. 1989) ("[A] controversy between good-faith adverse claimants to pension plan benefits is subject to settlement like any other, and that an assignment made pursuant to a bona fide settlement of such a controversy is not invalidated by the anti-alienation provision …."). Accordingly, LaBouve's argument that § 1056(d)(1) necessarily precludes the release or waiver of his benefits is without merit.

### 2. Knowing and voluntary

LaBouve submits that if the release is not void, it is invalid. The parties do not dispute that "[f]ederal common law controls the interpretation of a release of federal claims." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *see, e.g., Guardian Life Ins. Co. of Am. v. Finch*, 395 F.3d 238, 243 (5th Cir. 2004) (Fifth Circuit has "longstanding approach of relying on federal common law to determine if an ERISA plan's beneficiary has effected a common law waiver"). Under *Rhoades*, a party may waive ERISA benefits as part of a settlement agreement if the waiver is knowing and voluntary.[5] *Rhoades*, 196 F.3d at 598. The Fifth Circuit employs a two-step, burden-shifting framework to assess a release's validity and enforceability:

> Once a party establishes that his opponent signed a release that addresses the claims at issue, received adequate consideration, and breached the release, the opponent has the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense. We examine the *totality of the circumstances* to determine whether the releasor has established an appropriate defense.

*Clayton*, 722 F.3d at 292 (quoting *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994)).

---

[5] Releases and waivers are analyzed under the same knowing and voluntary standard. *Clayton v. ConocoPhillips Co.*, 722 F.3d 279, 292 (5th Cir. 2013).

4

*a. First step*

It is undisputed that LaBouve signed the Agreement that addresses the claims at issue here. Additionally, assuming the release is valid, LaBouve's instant action constitutes a breach. The final inquiry under the first step of the *Clayton* framework is whether there was consideration paid for the release. For example, in *Ralser v. Winn Dixie Stores, Inc.*, at the first step of the *Clayton* framework, the court concluded that a general waiver and release was unsupported by consideration because the general waiver was supported by the same consideration supporting a separate "Joint Petition for Compromise." 35 F.Supp.3d 799, 804–05 (E.D. La. 2014).

LaBouve argues that this case is similar to *Ralser* and that "there was no consideration mentioned, much less paid, in exchange for Mr. LaBouve purportedly waiving vested disability retirement benefits." Doc. #14 at 6. Specifically, LaBouve contends that, because the Agreement made clear he was paid $190,000.00 for the worker's compensation claim and "[t]he additional nominal consideration was paid" for the threatened ADA claim and union grievance, there was no compensation paid to release his disability benefits. *Id*. at 7.

Metso, on the other hand, contends that compensation was paid because the disability benefits LaBouve now seeks were related to his worker's compensation claim, for which he received $190,000.00 in consideration. Metso asserts that because LaBouve's claimed entitlement "stemmed directly from his workplace injury," the $190,000.00 payment contemplated his future disability benefits at issue here.

The Court finds the Agreement distinguishable from the dual releases executed in *Ralser*. The *Ralser* court, in reasoning that there was no consideration paid in exchange for the general waiver, relied on the fact that there were two different documents, the "Joint Petition for Compromise," which was supported by $15,000.00, and a much broader, any-and-all general

5

release, which was supported by the same $15,000.00. The court held that because "Winn Dixie gave Ralser no additional compensation for signing the general waiver and release, which was not part of the workers' compensation settlement and which extended the release to all causes of action regardless of their relationship to his workers' compensation claim," the general release was invalid. *Ralser*, 35 F.Supp.3d at 805. However, the court noted that "[t]his would be a much different case if Ralser's present lawsuit had some relationship to his work-related injury," as "Ralser would be barred from bringing such a suit because he waived all claims arising out of that work-related injury in his workers' compensation settlement." *Id*.

Here, LaBouve's disability benefits arose out of the work-related injury that was settled in the Agreement. *See Peters v. Reliance Standard Life Ins. Co.*, 238 F.Supp.3d 905, 912–13 (S.D. Tex. 2017) (release of long-term disability claim released along with underlying negligence claim). Accordingly, the Court concludes that there was consideration paid to LaBouve to release his disability benefits, and the burden shifts to LaBouve to show the release is invalid.

### b. Second step

The Fifth Circuit employs a six-factor, totality of the circumstances balancing test to determine whether a release is invalid: (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by counsel; and (6) whether the consideration given in exchange exceeds employee benefits to which the employee was already entitled by contract or law. *O'Hare v. Global Nat. Res., Inc.*, 898 F.2d 1015, 1017 (5th Cir. 1990). "This list is not exclusive, and a court need not address each of these six factors when determining whether a release was entered into knowingly and voluntarily. Rather, these are simply six 'relevant' factors

to consider under the totality of the circumstances test." *Hughes v. Grand Casinos, Inc.*, No. 99-60123, 1999 WL 1068293, at *2 (5th Cir. Oct. 22, 1999) (per curiam).

As to the first factor, LaBouve argues that he was a factory worker and was thus not a sophisticated party. The Court finds this factor weighs in LaBouve's favor but only slightly. While LaBouve may not be a sophisticated party, he does not contend that he was unable to understand the nature or the terms of the agreement just based only on his occupation. *See Hampton v. Ford Motor Co.*, 561 F.3d 709, 717 (7th Cir. 2009) (sophistication inquiry focused on level of education and ability to read); *Uherek v. Houston Light and Power Co.*, 997 F.Supp. 789, 792 (S.D. Tex. 1998) (same).

Second, LaBouve does not state how long he had to review the Agreement before signing it. However, it appears he had ample time to negotiate the Agreement's terms, even if he thought the Agreement only concerned his worker's compensation claim, potential ADA claim, and his union grievance. The Court finds this factor weighs in favor of Metso.

As to the role he played in determining the final terms of the Agreement, LaBouve asserts that, through counsel, he negotiated the Agreement. This factor weighs in Metso's favor. *See Gautreaux v. Apache Corp.*, No. 07-5653, 2011 WL 2637275, at *2 (E.D. La. June 16, 2011) ("Where … Plaintiff is represented throughout the settlement negotiations by his attorney of choice, the settlement agreement is presumptively informed, willing, and valid.").

Regarding clarity of the agreement, LaBouve contends the Agreement clearly only released his worker's compensation claim, his potential ADA claim, and his union grievance, as "[t]here was no 'claim' for pension benefits at the time the release was executed and no such 'claim' is mentioned in the release (although others are)." Doc. #14 at 7. Metso argues that the Agreement is clear because it provides that LaBouve explicitly released ERISA claims. Doc. #4; *see* Doc. #1-

7

2 at ¶ 7.

The Court finds the Agreement was sufficiently clear to release Metso's obligations to pay LaBouve disability benefits. Under the section titled, "The Matters," the Agreement states that it

> fully and finally resolve[s] any and all claims or disputes, whether known or unknown, that have been made or could have been made by or on behalf of the Employee against the Company or involving the Company relating to conduct or events occurring at any time prior to and including the date on which this Agreement is executed .... The Employee has threatened to file claims relating to injuries allegedly sustained by Employee while working for the Company ….

Doc. #1-2 at ¶ 3. This language contemplates the settlement of the worker's compensation claim and any claims that might arise from it. Further, because the "Waiver and Release of Claims" provision explicitly states that LaBouve is releasing "any and all claims … arising out of … [ERISA]," the Agreement clearly releases Metso from obligations arising from that claim, including any claims under ERISA. As such, the clarity factor weighs in Metso's favor. *See, e.g.*, *Chaplin*, 307 F.3d at 373 (upholding any-and-all waiver provision to release ERISA claims despite not explicitly mentioning ERISA release).

LaBouve was represented by counsel in negotiating and executing the Agreement, which weighs in Metso's favor.

Regarding whether the consideration exceeds the benefits to which LaBouve was already entitled, LaBouve does not provide any information in his complaint concerning how the amount he received compares to the amount he would be due by Metso under the terms of the plan. This final factor then also weighs in favor of Metso. *See Peters*, 238 F.Supp.3d at 912–13.

After considering the six *O'Hare* factors with the majority weighing in Metso's favor, the Court concludes that LaBouve's release of disability benefits was knowing and voluntary. Accordingly, his claim for breach of contract will be dismissed.

### B. Breach of Fiduciary Duty

LaBouve's argument concerning his breach of fiduciary duty claim appears to focus on his retirement benefits. Doc. #14 at 4. Specifically, he argues that "at a minimum, [Metso] had a duty to inform him that he was forfeiting his substantial (likely more than $200,000.00) retirement for $3,750.00[.]" *Id*. As discussed above, Metso does not challenge LaBouve's entitlement to his retirement benefits, rather it only contests his claim for disability benefits. Because LaBouve does not argue that there was a breach of fiduciary duty with respect to his claim for disability benefits, such failure amounts to waiver of the argument. *See Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 358 n.12 (5th Cir. 2011) ("Jaso has waived this argument on appeal by failing to raise it below in response to Defendants' motion to dismiss.") (citing *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 701) (5th Cir. 2004)). Even had LaBouve made such an argument with respect to his disability benefits, courts have held that a knowing and voluntary release of claims bars a subsequent breach of fiduciary duty claim. *See, e.g.*, *Peters*, 238 F.Supp.3d at 913 (dismissing case including claim for breach of fiduciary duty because plaintiff released underlying claims). Accordingly, LaBouve's claim for breach of fiduciary duty will be dismissed.

### V
### Conclusion

For these reasons, Metso's motion to dismiss [3] is **GRANTED**; and LaBouve's motion for summary judgment [16] is **DENIED as moot**.

**SO ORDERED**, this 28th day of March, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**